# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| HAIYANG WANG, <br><br> Petitioner, <br><br> v. <br><br> WARDEN OF DESERT VIEW ANNEX DETENTION FACILITY et al., <br><br> Respondents. | Case No. 5:26-cv-01595-DFM <br><br><br> ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I.    INTRODUCTION

On April 1, 2026, Petitioner Haiyang Wang filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). The next day, the Court denied Petitioner's Ex Parte Application for a Temporary Restraining Order. See Dkt. 5. On April 9, 2026, Respondents filed a three-page Answer. See Dkt. 8 ("Answer"). On April 10, 2026, Petitioner filed a Reply. See Dkt. 9 ("Reply").

On April 16, 2026, the Court held a hearing and directed Respondents to file a Supplemental Answer. See Dkt. 13. On April 20, 2026, Respondents filed a Supplemental Answer with a Declaration of Deportation Officer Hector Jesus Guizar Jr. and supporting exhibits. See Dkts. 14 ("Supplemental

Answer"), 14-1 ("Guizar Decl."). On April 23, 2026, Petitioner filed a Supplemental Reply. See Dkt. 15.

For the reasons set forth below, the Petition is **GRANTED** in part. The Court **ORDERS** that Petitioner be released from custody within three (3) days.

## II.  BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. See Petition ¶ 1. On November 5, 2023, U.S. Border Patrol encountered and arrested Petitioner near Tecate, California. See Guizar Decl. ¶ 5. On November 8, 2023, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), and placed him in removal proceedings. See id. ¶ 6; Supplemental Answer, Ex. B.

That same day, DHS released Petitioner on his own recognizance pursuant to an Order of Release on Recognizance ("OREC") under section 236 of the Immigration and Nationality Act. See Guizar Decl. ¶ 5; Supplemental Answer, Ex. A. The OREC required Petitioner to, among other things, report for any hearing or interview as directed, report in person to immigration authorities as scheduled, not change his place of residence without written permission, and not violate any laws. See Supplemental Answer, Ex. A.

Following his release, Petitioner filed an application for asylum, which remains pending before the Immigration Court. See Petition ¶ 24. Petitioner alleges that he established a stable life in the United States, worked to support himself, paid taxes, and lived openly and peacefully in the community, with no criminal history. See id. ¶ 25.

In their Supplemental Answer, Respondents assert that Petitioner violated his release conditions on three occasions: by failing to report for a check-in on July 11, 2025; by missing a biometric check-in appointment on

December 29, 2025; and by missing another biometric check-in appointment on February 23, 2026. See Guizar Decl. ¶¶ 7-9. Based on these alleged violations, immigration authorities determined that Petitioner was subject to re-detention. See id. ¶ 10.

On March 25, 2026, Petitioner appeared for a routine check-in at the Immigration and Customs Enforcement ("ICE") office in Los Angeles. See Petition ¶ 26; Guizar Decl. ¶ 26. During that check-in, ICE took Petitioner into custody without a warrant and without any prior notice, hearing, or opportunity to contest his detention. See Petition ¶¶ 26, 28. ICE confiscated Petitioner's personal belongings, including his passport and Social Security card. See id. ¶ 27. Petitioner was transferred to the Desert View Annex Detention Facility, where he remains in ICE custody. See Guizar Decl. ¶ 11. At no time before or after his re-detention has Petitioner been provided a bond hearing or any individualized hearing before a neutral decisionmaker. See Petition ¶¶ 28-29.

Petitioner asserts claims for unlawful detention in violation of the Fifth Amendment Due Process Clause (Count One) and unlawful detention under 8 U.S.C. § 1226(a) (Count Two), and seeks, inter alia, immediate release from custody. See id. ¶¶ 30-47; see also id. at 10-11 (Prayer for Relief).

### III.  DISCUSSION

The Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is "in custody" and challenges the constitutionality of that physical confinement. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012); Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

### A.  Statutory Framework

Respondents state that Petitioner "appears to be" a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, No. 25-01873, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), and concede that

Petitioner would be entitled to a bond hearing under § 1226(a). See Answer at 2 (conceding that "to the extent Petitioner would be entitled to any remedy, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)"). Accordingly, the Court assumes without deciding that Petitioner's detention is governed by 8 U.S.C. § 1226(a), the general detention provision applicable to noncitizens in removal proceedings who are not subject to mandatory detention under § 1226(c).

Under § 1226(a), the Government "may continue to detain the arrested alien" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Once released, an alien's bond is subject to revocation "at any time" under 8 U.S.C. § 1226(b). See id. at 309. However, the Board of Immigration Appeals has placed a limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [ DHS] absent a change of circumstance." Matter of Sugay, 17 I&N Dec. 637, 640 (BIA 1981); see also Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021). The Government's apparent practice, even where the initial release decision was made by a DHS officer rather than an immigration judge, has been to require a showing of changed circumstances before re-arrest. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (summarizing government counsel's testimony).

**B.    Due Process Clause**

Noncitizens physically present in the United States are also protected by the Due Process Clause of the Fifth Amendment. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government

4

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Id. at 690 (citation omitted); see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." (citations omitted)); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citation omitted)); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that [p]etitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process.").

Here, Petitioner was released on his own recognizance on November 8, 2023, after DHS determined his custody status warranted release. See Guizar Decl. ¶ 5; Supplemental Answer, Exs. A, C. Since then, Petitioner lived in the community for over two years before being re-detained. His release, his period of conditional freedom, and his establishment of a life in the community created a constitutionally protected liberty interest in remaining out of

5

detention. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025).

Respondents' Supplemental Answer presents evidence that Petitioner missed three check-in or biometric appointments. See Guizar Decl. ¶¶ 7–9. Even assuming these violations constitute changed circumstances that could justify re-detention, the existence of changed circumstances does not excuse the Government from providing constitutionally adequate process before re-detaining a noncitizen who has been living at liberty. Due process requires, at minimum, notice and an opportunity to be heard before the Government may revoke a person's conditional release and return them to custody. See Morrissey, 408 U.S. at 482, 487-89 (holding that even where a parolee has violated conditions, due process requires a hearing before final revocation); Garro Pinchi, 792 F. Supp. 3d at 1032-33. Petitioner received no such process here.

## C.    The *Mathews* Factors Weigh in Favor of Petitioner

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

First, Petitioner has a significant private interest in remaining free from detention. He lived in the community for over two years after his release from DHS custody. During that time, he established a stable life, worked, paid

6

taxes, filed for asylum, and made good-faith efforts to comply with all reporting requirements. <u>See</u> Petition ¶¶ 24-25. His continued liberty interest in remaining on release is undermined by his immigration detention without a pre-detention hearing. <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1093-94. This factor weighs strongly in Petitioner's favor.

Second, the risk of erroneous deprivation is considerable. Petitioner has not received any bond hearing, any custody redetermination, or any individualized hearing before a neutral decisionmaker since his re-detention on March 25, 2026. <u>See</u> Petition ¶¶ 28-29. The Government points to missed check-in appointments as the basis for re-detention, but Petitioner has had no opportunity to contest these allegations, offer explanations, or present evidence of mitigating circumstances. Because there have been no procedural safeguards to determine whether Petitioner's detention is justified, the risk of erroneous deprivation is high. <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1094. This factor weighs strongly in Petitioner's favor.

Third, the Government's interest in detaining Petitioner without a pre-deprivation hearing is low. <u>See</u> <u>Hasratyan v. Bondi</u>, No. 26-210, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026). While the Government has a "significant" interest in enforcing its immigration laws, <u>Rodriguez Diaz</u>, 53 F.4th at 1209, that interest is diminished where, as here, Petitioner lived in the community for over two years and has a pending asylum application. Even crediting the Government's allegations that Petitioner missed check-in appointments, the effort and cost required to provide Petitioner with procedural safeguards before re-detention—rather than simply detaining him at a check-in without any hearing—is minimal. <u>See</u> <u>Doe</u>, 787 F. Supp. 3d at 1094. This factor weighs in Petitioner's favor.

All three <u>Mathews</u> factors weigh in Petitioner's favor. Respondents' re-detention of Petitioner without any hearing before a neutral decisionmaker violated his procedural due process rights under the Fifth Amendment.

**D.    <u>Remedy</u>**

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy.

After applying the <u>Mathews</u> test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing <u>before</u> the State deprives a person of liberty or property." <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990) (emphasis in original) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. <u>See id.</u> at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. <u>See Guillermo M. R.</u>, 791 F. Supp. 3d at 1036.

Here, the Court finds that Petitioner's detention without a pre-deprivation hearing violated his due process rights and rendered his detention unlawful. To the extent Respondents argue that Petitioner is entitled only to a bond hearing, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid." <u>Jorge M.F. v. Jennings</u>, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); <u>see also E.A. T.-B. v. Wamsley</u>, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

The Court's order is limited to remedying the procedural due process violation that has occurred. Petitioner requests that the Court also enjoin Respondents from re-detaining him "absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public." Petition at 11. The Court declines to

do so. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court, including any changed circumstances, the procedures Respondents employ, and the statutory authority invoked. The Court's ruling today addresses only the lawfulness of Petitioner's current detention, which began on March 25, 2026, and which the Court concludes violates the Fifth Amendment. Nothing in this Order should be read to express any view on the lawfulness of any future detention decision.

### E.    Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See Petition at 11. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days (30) of the judgment.

## IV.   ORDER

The Petition is **GRANTED** as follows:

1.   Respondents shall release Petitioner from detention within three (3) days.

2.   Respondents shall return to Petitioner all personal property confiscated from him at the time of his arrest, including his passport and Social Security card.

3.   The parties shall file a joint status report within ten (10) days of the date of this Order confirming that Petitioner has been released and his property returned.

Date: April 24, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge

10